WIGGINS, Justice
(concurring specialty).
I concur wholeheartedly with the majority opinion. I write separately because the district court’s confinement instruction constituted reversible error. Jury instruction number 23 on confinement provided in relevant part:
No minimum time of confinement or distance of removal is required. It must be more than slight. The confinement must have significance apart from the sexual abuse.
In determining whether confinement exists, you may consider whether:
1. The risk of harm to [B.S.] was increased.
2. The risk of detection was reduced.
3. Escape was made easier.[7]
*488 The defendant’s counsel did not object to the instruction at trial.
The defendant in his pro se brief contends, among other things, he received ineffective assistance of counsel because his counsel did not object to the instruction that failed to include the intensifiers for the three factors mentioned in State v. Rich, 305 N.W.2d 739, 745 (Iowa 1981). Although the defendant’s pro se brief does not mention whether he is proceeding under the Iowa or the United States Constitution, I consider both claims preserved under the circumstances.[8]
The defendant asserts although the jury instruction required the jury to find the confinement in the case had significance beyond the underlying sexual assault, the three-factor Rich test was included without its intensifiers. Specifically, in order to support a kidnapping conviction, the confinement must “substantially increase[ ] the risk of harm ..., significantly lessen[ ] the risk of detection, or significantly facilitate[ ] escape.” Id. at 745 (emphasis added). By failing to include this language, the defendant argues, a jury could conclude the requirement that confinement be significant beyond the underlying sexual assault is supported by any increase in the risk of harm, lessening of the risk of detection, or facilitation of escape, however slight. '
I. Iowa Precedents.
We have never approved the instruction given in this case. In State v. Hardin, the jury instruction stated:
“One of the essential elements which the State is required to prove beyond a reasonable doubt in either kidnapping in the first degree or kidnapping in the third degree or false imprisonment is that [the victim] was confined or removed.
In that regard, you are instructed that this requires more than confinement or removal that is inherent within the commission of the offense of sexual abuse.
A person is ‘confined’ when that person’s freedom to move about is substantially restricted by force, threat, or deception. The person may be confined either in the place where the restriction commences or in a place to which the person has been removed.
Although no minimal period of confinement or distance of removal is required, such must exceed that which is normally incidental or dependent upon the commission of a sexual abuse and must be more than slight, inconsequential, or as an incident inherent in the offense of sexual abuse so that the confinement or removal has a significance separate and apart from a sexual abuse.
Such confinement or removal may exist because it substantially increases the risk of harm to the victim or significantly lessens the risk of detection.”
359 N.W.2d 185, 189-90 (Iowa 1984) (alteration in original). The instruction generally conformed to the Rich tripartite test. See id.
In State v. Doughty, we quoted at length from Rich, concluding an instruction that did not outline the Rich tripartite test was flawed and required a new trial under the circumstances. 359 N.W.2d 439, 440-42 (Iowa 1984). We noted that the instruction failed to indicate “the removal or confinement necessary for first-degree kidnapping.” Id. at 441.
*489 Our next case involving proper instructions in the context of a kidnapping charge when there was an underlying felony was State v. Misner, 410 N.W.2d 216, 221-22 (Iowa 1987). In Misner, we stated that Rich “delineated the standards by which a jury could determine whether the evidence demonstrated a confinement or removal sufficient to support a charge of kidnapping.” Id. at 222.
We then declared the standards by which a jury could determine whether the evidence supported a kidnapping charge:
1. No minimum period of confinement or distance of removal is required for conviction of kidnapping.
2. The period of confinement or distance of removal must exceed what is normally incidental to the commission of sexual abuse.
3. The confinement or removal must have significance independent from the act of sexual abuse itself in one of the following ways:
a. Substantially increase the risk of harm to the victim.
b. Significantly lessen the risk of detection.
c. Significantly facilitate escape following the consummation of the sex abuse offense.
Id. We reaffirmed that “[tjhese standards are unquestionably the law in Iowa today with respect to cases involving a kidnapping charge generated out of a sexual abuse charge.” Id.
In State v. Hatter, we laid out in detail the instruction given by the district court. 414 N.W.2d 333, 336 (Iowa 1987). It provided:
“One of the essential elements of Kidnapping which the State must prove beyond a reasonable doubt is that (the victim) was confined or removed or both. This requires more than the confinement or removal that is inherent within the commission of the offense of sexual abuse, as it is alleged to have occurred in this case.
Although no minimal period of confinement or distance of removal is required, it must exceed that which is incidental or dependent upon the commission of any sexual abuse and must be more than slight, inconsequential or as an incident inherent to any sexual abuse so that the confinement or removal or both has a significance separate and apart from any sexual abuse.
Such confinement or removal or both may exist because it substantially increases the risk of harm to the victim or significantly lessens the risk of detection or significantly facilitates escape. However, it is for you, the jury, after a full and impartial consideration of the evidence admitted during the trial, to determine whether there is confinement or removal or both as defined herein.”

Id.

Finally, in State v. McGrew, we stated, “[A] jury question was presented on whether this type of confinement significantly increased [the victim’s] risk of further harm.” 515 N.W.2d 36, 40 (Iowa 1994). We further noted “a rational fact-finder could find that the risk of detection of the sexual abuse crime was significantly lessened as well as that the risk of harm was substantially increased.” Id. Clearly, the fact issue for the jury in McGrew was whether the evidence met the Rich tripartite test. See id.
The Iowa Court of Appeals, however, declined to reverse a kidnapping conviction when the Iowa State Bar Association (ISBA) kidnapping instruction was given in State v. Ripperger, 514 N.W.2d 740, 750-51 (Iowa Ct.App.1994). In that case, the court of appeals simply stated the “instruction appropriately conveyed the law,” *490 and the court was reluctant to disapprove “ ‘Uniform Instructions.’ ” Id. (quoting State v. Doss, 355 N.W.2d 874, 881 (Iowa 1984)).
We do not preapprove or give a presumption of correctness to the instructions published by the ISBA. I understand the ISBA committee appointed to formulate these instructions is industrious and does its best to get the law right. However, we can never delegate the formulation of the law to the instruction committee. This is not only my view, but also a view held by the United States Court of Appeals for the Eighth Circuit. See United States v. Jones, 28 F.Sd 1407, 1409 (8th Cir.1994) (explaining the Eighth Circuit’s model instructions are suggestions not binding on lower courts); United States v. Norton, 846 F.2d 521, 525 (8th Cir.1988) (same); United States v. Ridinger, 805 F.2d 818, 821 (8th Cir.1986) (same).
Typically district courts in the Eighth Circuit derive their criminal jury instructions from the Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit. See generally Judicial Comm, on Model Jury Instructions for the Eighth Circuit, Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit (2014). The committee prepares the instructions. See id. The process in the Eighth Circuit is similar to the process in Iowa.
Commenting on these instructions in one opinion, the Eighth Circuit has taken the view that it has not preapproved these instructions and it needs to look at the instructions on a case-by-case basis. Ri-dinger, 805 F.2d at 821. In another opinion, the Eighth Circuit aptly noted “[t]he Model Instructions, ... are not binding on the district courts of this circuit, but are merely helpful suggestions to assist the district courts.” Norton, 846 F.2d at 525. The Eighth Circuit reaffirmed this view in Jones, 23 F.3d at 1409.
Accordingly, we are required to scrutinize the ISBA’s instructions and will not hesitate to disapprove faulty jury instructions. See, e.g., State v. Beets, 528 N.W.2d 521, 523 (Iowa 1995) (finding a uniform instruction regarding the offense of assault with intent to commit sexual abuse was not a correct statement of the law); State v. McKettrick, 480 N.W.2d 52, 58 (Iowa 1992) (concluding uniform criminal jury instructions did not correctly state elements of assault causing bodily injury); State v. Deanda, 218 N.W.2d 649, 650-51 (Iowa 1974) (holding uniform instruction given on entrapment was erroneous as, among other things, it “ignore[d] the factual evaluation to be undertaken on a case by case basis” and “fail[ed] to focus on the crucial question” involved in the case), overruled on other grounds by State v. Monroe, 236 N.W.2d 24, 33 (Iowa 1975).
The jury instruction given in this case is inconsistent with our holding in this case— that the defendant’s confinement of the victim must have substantially increased the risk of harm, significantly lessened the risk of detection, or significantly facilitated the risk of escape. Thus, the instruction as given unduly waters down our approach to kidnapping when there is an underlying criminal offense.
Although the instruction accurately indicates the confinement must be significant apart from the sexual abuse, it does not clearly state the Rich tripartite test. The risk of harm beyond sexual abuse must be substantial, and the decreased risk of detection or facilitation of escape must be significant in order to support a kidnapping conviction. The purpose of these intensifiers is to prevent the swallowing up of the crime of sexual abuse by the much more serious crime of kidnapping. Compare Iowa Code § 709.3(2) (2011) (defining *491 second-degree sexual abuse), and id. §§ 902.9(1)(6), .12(3) (explaining second-degree sexual abuse carries a maximum sentence of no more than twenty-five years, with a seventy percent mandatory minimum), with id. § 902.1(1) (explaining first-degree kidnapping is a class “A” felony, carrying with it a sentence of life imprisonment).
As indicated above, virtually all of our kidnapping cases have included these important words, describing the proper standard in evaluating the evidence in kidnapping cases involving underlying crimes. See, e.g., Hatter, 414 N.W.2d at 335-36; Misner, 410 N.W.2d at 222; Hardin, 359 N.W.2d at 190 (“We reaffirm the holding and language of Rich.”); see also, e.g., Holmes v. State, 775 N.W.2d 733, 736-37 (Iowa Ct.App.2009) (stating the Rich tripartite test); State v. Ledezma, 549 N.W.2d 307, 311 (Iowa Ct.App.1996) (same); cf. State v. Griffin, 564 N.W.2d 370, 373 (Iowa 1997) (reiterating the policy behind the incidéntal rule and noting the “legislature did not intend to afford prosecutors the option of bootstrapping convictions for kidnapping, carrying life sentences, onto charges for crimes for which the legislature provides much less severe penalties” (internal quotation marks omitted)).
Under the instruction given by the court in this case, however, a jury could have concluded a relatively slight increase in the risk of harm or relatively slight decrease in the risk of detection or ease of escape was sufficient to support a kidnapping conviction. Cf. Doughty, 359 N.W.2d at 441 (noting that “[wjhile the jury could well have found that the removal and confinement were not merely incident to the sexual abuse, we cannot say it would be compelled to reach that conclusion” based on a faulty jury instruction that did not incorporate the Rich tripartite test). Thus, I think the instruction in the present case, if not inaccurate, was at least confusing. See Burkhalter v. Burkhalter, 841 N.W.2d 93, 97 (Iowa 2013) (“When the challenged instruction is conflicting and confusing, error is presumed prejudicial and reversal is required.” (Internal quotation marks omitted.)); see also Diversified Mgmt., Inc. v. Denver Post, Inc., 653 P.2d 1103, 1110 (Colo.1982) (en banc) (noting “even accurate statements of the law should not be used in jury instructions if they are misleading” and “it is error to include statements of the law without instructing the jury on how to apply them”). Confusing instructions are especially problematic in a factually close case, as is the situation here. See People v. James, 196 Cal. App.3d 272, 241 Cal.Rptr. 691, 700-01 (1987) (finding a confusing instruction harmless and noting it was “significant this [was] not a close case”); Preston v. State, 282 Ga. 210, 647 S.E.2d 260, 263 (2007) (noting a particular instruction should not be given in the future, as it “could have the possibility of being confusing in a close case”); see also United States v. Wisecar-ver, 598 F.3d 982, 989-90 (8th Cir.2010) (holding confusing jury instruction given in a close case seriously affected the fairness and integrity of the trial); United States v. Easley, 942 F.2d 405, 411-12 (6th Cir.1991) (reversing and remanding for a new trial in a close case because the district court erred by giving an instruction that had the possibility of causing considerable jury confusion).
II. Ineffective Assistance Analysis.
The pro se defendant does not suggest an approach to evaluating effectiveness of counsel other than that announced in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), and I therefore apply that standard in this case. On the first prong, I think competent counsel should have rec *492 ognized the instruction missed an important part of our law regarding kidnapping. See id. Even a cursory review of our caselaw would have revealed we repeatedly emphasized the risk of harm must be substantial and the lessened detection and ease of escape must be significant. Read in the full context of our cases, the court of appeals decision in Ripperger is doubtful precedent, particularly in light of McGrew, an Iowa Supreme Court case decided the same year which relied heavily upon Rich. See McGrew, 515 N.W.2d at 39 (citing the Rich tripartite test, and noting that since Rich we have adhered to its analysis regarding application of the incidental rule); Ripperger, 514 N.W.2d at 750-51.
I think it is apparent that a challenge to the instruction, particularly in a case where the evidence supporting confinement in excess of that incidental to sexual abuse was thin, a challenge to a jury in-, struction as not conforming with Rich and its clear progeny applying the tripartite test was a claim worth raising. See State v. Schoelerman, 315 N.W.2d 67, 72 (Iowa 1982) (finding nothing would have stopped an attorney from raising an issue if the attorney would have consulted the law in other jurisdictions when none existed in Iowa); see also State v. Ross, 845 N.W.2d 692, 698 (Iowa 2014) (recognizing failure to preserve error by objecting to an inaccurate jury instruction breaches an attorney’s duty); State v. Ondayog, 722 N.W.2d 778, 785 (Iowa 2006) (“[Fjailure to recognize an erroneous [jury] instruction and preserve error breaches an essential duty.”). We have cited, with approval, a treatise that declares that in order to be effective, counsel must “diligently devote[ ] him or herself to scholarly study of the governing legal principles.” State v. Vance, 790 N.W.2d 775, 786 (Iowa 2010) (internal quotation marks omitted). Such a study would have revealed the inconsistency between the approved instruction in Ripperger and our caselaw.
I further conclude the faulty instruction prejudiced the defendant. Our precedents emphasize that while in some cases the evidence clearly establishes the prerequisites for kidnapping independent of the underlying crimes and in others, the evidence is clearly lacking, the cases in the middle category between these extremes are cases for the jury to decide. In making the necessary determination, it is axiomatic the court properly instruct the jury. In a factually close case such as this, the failure of the district court to give a completely accurate instruction under the Rich tripartite test undermines my confidence in the verdict.
Further, I think trial courts should reformulate the ISBA’s instruction to conform with the holding in this case and include the concept that the defendant’s confinement of the victim substantially increased the risk of harm, significantly lessened the risk of detection, or significantly facilitated the risk of escape to avoid reversible error.

. Jury instruction number 23 was adopted from Iowa State Bar Association (ISBA), Iowa Criminal Jury Instruction 1000.5 (2012).

. The proper treatment of such claims is discussed in State v. Halverson, 857 N.W.2d 632, 635 (Iowa 2015).